IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID R. HECKMAN II | : | CIVIL ACTION |
| | : | |
| v. | : | No. 16-229 |
| | : | |
| NANCY A. BERRYHILL,[1] | : | |
| *ACTING COMMISSIONER OF SOCIAL* | : | |
| *SECURITY* | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                         April 28, 2017

      Plaintiff David R. Heckman II seeks review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits (DIB) and denying in part his application for supplemental security income (SSI). At issue is the finding of the Administrative Law Judge (ALJ) that Plaintiff was capable of performing certain jobs in the national economy prior to August 14, 2013, even though his vision was impaired to some degree as a result of macular degeneration, an eye disease that causes vision loss. United States Chief Magistrate Judge Linda K. Caracappa has issued a Report and Recommendation (R&R) recommending that Plaintiff's request for review be denied, to which Plaintiff objects. Because this Court agrees with the Magistrate Judge that substantial evidence in the record supports the finding that Plaintiff was not disabled prior to August 14, 2013, Plaintiff's objections to the R&R will be overruled, and his request for review will be denied.

**BACKGROUND**

      In 2012, Plaintiff applied for DIB and SSI, alleging he had been disabled since November 28, 2011, as a result of numerous physical and mental impairments, including macular

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Federal Rule of Civil Procedure 25(d), Berryhill is substituted for Carolyn W. Colvin as the Defendant in this case.

degeneration. After his claims were administratively denied, Plaintiff requested a hearing before an ALJ, and a hearing was held by videoconference on April 3, 2014. Plaintiff appeared at the hearing with counsel and testified regarding his impairments. A vocational expert also testified. On August 8, 2014, the ALJ issued a partially favorable written decision finding Plaintiff was disabled as of August 14, 2013, but not prior to that date. The ALJ denied completely Plaintiff's claim for DIB because Plaintiff was eligible for such benefits only if he was disabled as of March 31, 2012. The ALJ also denied Plaintiff's claim for SSI for the period from November 28, 2011, his alleged disability onset date, to August 14, 2013, his established onset date. Plaintiff thereafter sought review by the Appeals Council, which denied his appeal, rendering the ALJ's decision the final decision of the Commissioner.

On January 19, 2016, Plaintiff filed this action, seeking review of the Commissioner's denial of benefits prior to August 14, 2013. Plaintiff argues the ALJ's finding that he was not disabled prior to August 14, 2013, is not supported by substantial evidence because the ALJ erred in determining there were jobs in the national economy that Plaintiff was capable of performing between November 28, 2011, and August 14, 2013. The case was referred to Chief Magistrate Judge Caracappa, who issued the R&R to which Plaintiff now objects.

**DISCUSSION**

In reviewing objections to a report and recommendation issued by a magistrate judge, a district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Judicial review of a final decision of the Commissioner, in contrast, is deferential. A court must affirm the Commissioner's decision "so long as [her] conclusions are supported by substantial evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014). "Substantial evidence is 'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)). Substantial evidence "is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Id.* (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the ALJ's decision is supported by substantial evidence, the district court is bound by the ALJ's findings, even if it "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the Social Security Act. The Commissioner uses the same five-step sequential evaluation process to determine whether an individual is disabled in both DIB and SSI cases. *See Burns v. Barnhart*, 312 F.3d 113, 118-19 & n.1 (3d Cir. 2002); 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI). This inquiry proceeds as follows.

At the first step, the Commissioner determines whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the Commissioner proceeds to the second step and determines whether the claimant has a severe, medically determinable physical or mental impairment or combination of impairments that meet a duration requirement.[2] *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled. *Id.* If so, the Commissioner next determines, at the third step, whether the claimant's impairment or combination of impairments meets or equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. If so, the claimant is disabled. If not, the Commissioner proceeds to the fourth step of the process and determines whether the claimant is

---

[2] The impairment or combination of impairments must either have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509.

still able to perform his past relevant work. *Id.* § 404.1520(a)(4)(iv). To make this determination, the Commissioner must assess the claimant's residual functional capacity (RFC), defined as "the most [the claimant] can still do despite [his] limitations." *Id.* § 404.1545(a)(1); *see also id.* § 404.1520(a)(4)(iv). The Commissioner must then compare the claimant's RFC with the physical and mental demands of his past relevant work. *Id.* § 404.1520(f). If the claimant retains the RFC to do his past relevant work, he is not disabled. *Id.* § 404.1520(a)(4)(iv), (f). If the claimant cannot perform his past relevant work, then the Commissioner must determine, at the fifth step, whether the claimant is capable of making an adjustment to other work, given his RFC, age, education, and work experience. *Id.* § 1404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant will be found to be disabled. *Id.*

The claimant bears the burden of proof at steps two through four. *Zirnsak*, 777 F.3d at 611. Thus, the claimant must prove by a preponderance of the evidence that he has a severe impairment which either meets or equals a listed impairment or prevents him from performing his past relevant work. *See id.* at 611-12. At step five, however, the burden shifts to the Commissioner to prove that "work exists in significant numbers in the national economy that [the claimant] can do." *See id.* at 612 (quoting 20 C.F.R. § 404.1560). At the fourth and fifth steps of the evaluation process, the Commissioner "often seeks advisory testimony from a vocational expert" and "will generally consult the *Dictionary of Occupational Titles* (DOT), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy." *Burns*, 312 F.3d at 119.

Applying the prescribed five-step process, the ALJ in this case found, at steps one through three, that (1) Plaintiff had not engaged in substantial gainful activity since his alleged

disability onset date of November 28, 2011; (2) Plaintiff suffered from numerous severe physical and mental impairments, including macular degeneration[3]; and (3) Plaintiff's severe impairments, individually and in combination, did not meet or equal the severity of a listed impairment. R. at 16-19. The ALJ then determined Plaintiff's RFC, finding that prior to August 14, 2013, Plaintiff was capable of performing light work subject to numerous additional limitations, including that he was limited to occupations "which do not require bilateral fine visual acuity."[4] R. at 19. For the period beginning on August 14, 2013, however, the ALJ's RFC assessment included the additional limitation that Plaintiff would have to "miss more than 4 day[s] of work per month secondary to blurred vision, marked-to-extreme limitations in behaving in an emotionally stable manner, [and] marked-to-extreme limitations in interacting with others." R. at 25-26. Based on this RFC assessment, the ALJ found, at step four of the evaluation process, that Plaintiff was unable to perform any past relevant work at any time after his alleged disability onset date of November 28, 2011, noting Plaintiff's past work as a heavy equipment operator "require[d] medium exertional demands." R. at 27. Finally, crediting the vocational expert's hearing testimony regarding the availability of jobs for a person with

---

[3] The ALJ also found Plaintiff suffered from the severe impairments of status post bilateral inguinal hernia repairs, peripheral neuropathy, hepatitis C, degenerative disc disease at L4-S1, degenerative joint disease of the knees, hypersomnia secondary to medical condition, attention deficit hyperactivity disorder–combined type, major depressive disorder–recurrent and severe with psychotic features; posttraumatic stress disorder, generalized anxiety disorder, and history of alcohol dependence. R. at 16.

[4] The ALJ also limited Plaintiff to (1) "occasional postural maneuvers, such a stooping, kneeling, crouching, crawling, and climbing ramps and stairs"; (2) "no balancing and climbing ladders, ropes, and scaffolds"; (3) "occupations which do not require exposure to dangerous machinery and unprotected heights" or "the operation of a motor vehicle during working hours"; (4) "simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general relatively few workplace changes"; and (5) working "primarily with objects rather than with people" and jobs that do not "requir[e] teamwork or interaction with the public." R. at 19.

Plaintiff's RFC, the ALJ concluded, at step five, that prior to August 14, 2013, Plaintiff would have been able to perform the requirements of light, unskilled jobs such as sorter of agricultural produce, garment sorter, and folder–fabric material, all of which exist in significant numbers in the national economy. R. at 28-29. As to the period beginning on August 14, 2013, however, the ALJ concluded there were no jobs in the national economy Plaintiff could perform. R. at 29. The ALJ thus found Plaintiff was disabled as of August 14, 2013, but not before that date.

Plaintiff challenges the ALJ's step-five finding that Plaintiff was capable of making a successful adjustment to other work prior to August 14, 2013. Plaintiff argues the vocational expert's testimony that Plaintiff could perform the agricultural produce sorter, garment sorter, and folder jobs conflicts with the ALJ's RFC finding that Plaintiff was limited to jobs not requiring "bilateral fine visual acuity" because, according to the DOT, each of the jobs identified by the vocational expert requires constant or frequent "near acuity," a term defined in a companion publication to the DOT to mean "[c]larity of vision at 20 inches or less." U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, App. C (1993 ed.). Plaintiff maintains the ALJ failed to resolve this conflict in accordance with Social Security Ruling (SSR) 00-4p, and, as a result, the ALJ was precluded from relying on the vocational expert's testimony to find there were jobs Plaintiff could perform in the national economy prior to August 14, 2013.

SSR 00-4p is a policy interpretation ruling addressing the Social Security Administration's "standards for the use of vocational experts . . . who provide evidence at hearings before [ALJs]." SSR 00-4p, 2000 WL 1898703, at *1. Recognizing that occupational evidence provided by a vocational expert "generally should be consistent with the occupational information supplied by the DOT," the SSR provides that "[w]hen there is an apparent

unresolved conflict between [vocational expert] . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the [vocational expert] . . . evidence to support a determination or decision about whether the claimant is disabled." *Id.* at *2. As interpreted by the Third Circuit, SSR 00-4p requires an ALJ to "(1) ask, on the record, whether the [vocational expert's] testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Zirnsak*, 777 F.3d at 617 (quoting *Burns*, 312 F.3d at 127). While an ALJ's "failure to comply with these requirements may warrant remand in a particular case, . . . the presence of inconsistencies does not *mandate* remand, so long as 'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'" *Id.* (quoting *Rutherford*, 399 F.3d at 557).

The Magistrate Judge found the vocational expert's testimony did, in fact, conflict with the DOT in that the ALJ's hypothetical posited an individual who could not perform jobs requiring bilateral fine visual acuity, yet the vocational expert testified such a person could perform jobs that the DOT classifies as requiring frequent or constant near acuity.[5] *See* R&R 9.

---

[5] The Commissioner does not take issue with the Magistrate Judge's conclusion that a conflict existed, and, as Plaintiff notes, numerous district courts have found an RFC restriction limiting a claimant to work not involving fine visual acuity is inconsistent with the ability to perform work requiring near acuity. *See, e.g.*, *Bell v. Colvin*, No. 14-652, 2015 WL 3465764, at *6 (C.D. Cal. June 1, 2015) (holding an apparent conflict exists between finding an individual "is restricted from jobs requiring fine vision" and finding that person "may be capable of conducting tasks requiring frequent near visual acuity"); *Clements v. Colvin*, No. 12-144, 2013 WL 5231491, at *3 (N.D. Miss. Sept. 16, 2013) (recognizing a conflict between an ALJ's RFC limitation to "work requiring no fine visual acuity" and a vocational expert's testimony that the claimant could perform jobs requiring occasional or frequent near acuity); *Ehrhart v. Colvin*, No. 12-338, 2013 WL 4540700, at *4-5 (M.D. Pa. Aug. 27, 2013) (holding an ALJ erroneously accepted a vocational expert's testimony that the claimant could perform a job requiring frequent near acuity where the ALJ had found the claimant could not perform work requiring fine visual acuity). While a few courts have suggested fine visual acuity, a term that is not defined in the DOT or its companion publication, may not have the same meaning as near acuity, *see Sumner v.*

Despite this conflict, however, the Magistrate Judge concluded remand was not warranted because Plaintiff's counsel questioned the vocational expert about whether the visual acuity limitation included in the ALJ's hypothetical would prevent a person from performing the agricultural produce sorter job and the vocational expert opined it would not. The Magistrate Judge also found there was substantial evidence in other portions of the record to support the ALJ's conclusion that Plaintiff could perform the agricultural produce sorter job prior to August 14, 2013, because the medical evidence showed Plaintiff's vision had worsened as of that date. Plaintiff objects to both conclusions.

At the hearing, the ALJ took testimony from the vocational expert on the subject of Plaintiff's ability to perform his past relevant work or other work in the national economy. The ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age, education, and work experience who could perform light work, subject to all of the limitations included in Plaintiff's pre-August 14, 2013, RFC, including the limitation to occupations that do not require "bilateral fine and visual acuity." R. at 67. As to the visual acuity limitation, the ALJ elaborated that "[t]he treating source says [Plaintiff] cannot see small objects clearly but can see a large object." *Id.* In response to the ALJ's question whether there would be "any light jobs such an individual could perform," the vocational expert opined the hypothetical individual could perform the unskilled, light-duty occupations of sorter of agricultural produce, garment sorter, or folder, all of which exist in significant numbers in the national economy. R. at 68. As

---

*Comm'r of Soc. Sec.*, No. 13-14303, 2014 WL 6809891, at *4 (E.D. Mich. Dec. 2, 2014) (ALJ distinguished fine visual acuity from near acuity by explaining that near acuity refers to distance while fine visual acuity encompasses things like type size); *French v. Colvin*, No. 12-297, 2014 WL 1331042, at *13 (E.D.N.C. Feb. 24, 2014) (suggesting a limitation to jobs not requiring fine visual acuity does not inherently conflict with the ability to perform jobs requiring near acuity), the Commissioner does not contend the terms have materially different meanings.

8

required by SSR 00-4p, the ALJ asked the vocational expert, on the record, whether there were any conflicts between his testimony and the DOT, and the expert said there were not. R. at 69.

Although the existence of an apparent conflict between the vocational expert's testimony that Plaintiff could perform these jobs, despite his visual acuity limitation, and the DOT, which classifies each of the jobs as requiring constant or frequent near acuity, was not addressed during the ALJ's initial questioning of the vocational expert, Plaintiff's counsel subsequently raised the issue as to one of the jobs. In examining the vocational expert, Plaintiff's counsel elicited a description of the job responsibilities associated with the agricultural produce sorter occupation, which involves tasks such as "[s]orting agricultural produce, such as bulbs, fruits, nuts and vegetables," "segregat[ing] produce on a conveyor [belt or table],[6] working as a crew member, according to grain, color, [and] size"; placing produce in "container[s] or designated conveyors"; and "discard[ing] inferior or defective and foreign matter." R. at 69-70. Plaintiff's counsel then questioned whether a claimant with Plaintiff's visual acuity limitation could perform the job, noting it would require the ability to "discern small objects, color, size, shape, that sort of thing." R. at 70. The vocational expert agreed that the produce sorter job—like almost any unskilled job at the light or sedentary exertional level—would require vision because, in an unskilled job, "you're doing things as opposed to, you know, . . . communicating, using intellectual functions as much," but did not agree that Plaintiff's visual acuity limitation would preclude him from performing the job, noting that what constitutes a "small object is subjective." R. at 70-71; *see also* R. at 71 (suggesting, as to the visual acuity necessary to perform the agricultural produce sorter job, "it gets down to subjectively what we consider small objects"). The ALJ appeared to

---

[6] Although the transcript refers to segregating produce "on a conveyor (INAUDIBLE) cable," R. at 69, the DOT description of the job characterizes this task as segregating produce "on conveyor belt or table," DOT § 529.687-186, 1991 WL 674781.

9

agree with the vocational expert's assessment, interjecting, in response to counsel's suggestion that the produce sorter job would require the ability to discern small objects, "An apple is pretty good size, Counsel." R. at 70 [7]

Through his cross-examination of the vocational expert, Plaintiff's counsel raised the issue of a potential conflict between the vocational expert's testimony and the DOT as to one of the three jobs the vocational expert opined a hypothetical claimant with Plaintiff's limitations could perform. SSR 00-4p explains that when there is a conflict between vocational expert evidence and the DOT, neither source "automatically 'trumps'" the other. 2000 WL 1898704, at *2. An ALJ may rely on vocational expert evidence rather than the DOT where the vocational expert's explanation is reasonable. *Id.* Although the ALJ did not address the conflict in his written decision, his comment at the hearing that an apple is "pretty good size" suggests agreement with the vocational expert's opinion that Plaintiff's visual acuity limitation would not preclude him from performing the agricultural sorter job because Plaintiff's difficulty was in seeing small objects clearly, and, in the expert's view, sorting fruits and bulbs did not involve working with objects so small Plaintiff could not see them.

Plaintiff argues the vocational expert's explanation was not reasonable because, according to the DOT, an agricultural produce sorter may have to work with "objectively smaller

---

[7] Plaintiff's counsel then posed an alternative hypothetical to the ALJ, based on the limitations identified by Plaintiff's treating vitreo-retinal surgeon in a Vision Impairment Medical Source Statement completed in March 2014—seven months *after* Plaintiff's established disability onset date of August 14, 2013—which stated Plaintiff was likely to have difficulty avoiding ordinary hazards in the workplace, such as boxes on the floor, doors ajar, and approaching people and vehicles, and which noted Plaintiff was experiencing distortions in his vision and blind spots in both eyes. R. at 71-72 (hypothetical); R. at 490-92 (Vision Impact Medical Source Statement). In response to this alternative hypothetical, the vocational expert opined such a person's ability to perform the jobs he had previously identified would depend on the frequency with which the person was experiencing these symptom, noting that blind spots and distortion would impair a person's ability to have visual function. R. at 72.

objects" such as nuts, cherries, cranberries, raspberries, blueberries, and seeds. Pl.'s Objs. 6-7. The Court disagrees. Although the DOT entry for the agricultural produce sorter occupation mentions the smaller produce items Plaintiff references, these items appear as "undefined related titles" at the end of the occupational definition—i.e., "variation[s] or specialization[s] of the base occupation" of agricultural produce sorter that "differ[] from [the base occupation] enough to require an explanatory phrase and [their] own unique title." *See* DOT, Parts of the Occupational Definition, 1991 WL 645965 (describing the various parts of an occupational definition in the DOT, including undefined related titles). After setting forth the specific tasks associated with the agricultural produce sorter job, the DOT entry notes the job "[m]ay be designated according to work performed" and provides a series of related job titles, some of which involve working with smaller produce items (e.g., Cranberry Sorter, Seed Sorter). DOT § 529.687-186, 1991 WL 674781. Notably, the related job titles also include jobs that involve working with larger produce (e.g., Apple Sorter, Banana Grader). *See id.* The Court is thus not persuaded the references to smaller produce items—about which Plaintiff's counsel did not question the vocational expert at the hearing—render the expert's testimony that a person with Plaintiff's RFC could perform the job of agricultural sorter unreliable.[8]

In addition to concluding the ALJ could properly rely on the vocational expert's testimony regarding Plaintiff's ability to perform the agricultural produce sorter job, the Magistrate Judge also found the medical evidence in the record provided substantial evidence to support the ALJ's opinion because the medical evidence showed Plaintiff's vision problems had worsened as of August 14, 2013. Plaintiff objects that the Magistrate Judge's analysis of this

---

[8] The apparent conflict between the vocational expert's testimony and the DOT was addressed only as to the agricultural produce sorter job; hence, there is no basis on which to conclude the conflict was resolved as to either of the other jobs identified by the vocational expert.

11

issue rests on her conclusion that Plaintiff had no substantial visual limitations prior to August 14, 2013, a conclusion that is inconsistent with the ALJ's finding that Plaintiff's medical records prior to that date supported the visual acuity limitation.

In reviewing the record for substantial evidence, a court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford*, 399 F.3d at 552 (citation and internal quotation marks omitted). Thus, in determining whether there is other substantial evidence in the record to support the ALJ's conclusion that Plaintiff could perform the occupations identified by the vocational expert, this Court is not free to simply disregard the visual acuity limitation included in Plaintiff's RFC assessment both before and after his established onset date. Notably, the Commissioner agrees "[t]here was substantial evidence in the record to support . . . the ALJ's limitation to occupations not requiring bilateral fine visual acuity." Def.'s Resp. to Pl.'s Objs. 7.

Although the medical evidence supports the ALJ's finding that Plaintiff had some degree of visual impairment prior to August 14, 2013, the evidence also supports the ALJ's finding that Plaintiff's vision was better before that date than after. *See* R. at 21 ("[T]he evidence shows stable vision prior to the established onset date [of August 14, 2013] with worsening vision at the time of the established disability onset date."); R. at 26 ("The claimant's treatment records establish worsening vision as of the established disability onset date."). When Plaintiff first began seeing Dr. Shann Lin, the vitreo-retinal surgeon who treated him from March 2012 through at least March 2014,[9] Plaintiff's vision was 20/25 -2 in both eyes with correction. R. at

---

[9] Plaintiff was referred to Dr. Lin by Dr. Anthony Betts, an optometrist, in March 2012 after testing performed by Dr. Betts revealed a macular degenerative condition. R. at 339, 341. On March 7, 2012, Dr. Betts assessed Plaintiff's central visual acuity as 20/20 in his right eye and 20/25+ in his left eye with best correction, and his near visual acuity as 20/20 in both eyes with best correction. R. at 339.

12

335-36. Plaintiff received an IV Avastin injection in his right eye in April 2012, and in his left eye the following month.[10] R. at 332-34. Dr. Lin again assessed Plaintiff's vision as 20/25 -2 in both eyes with correction in May 2012, at the time of the second injection. R. at 326, 332.

In January 2013, Plaintiff returned to Dr. Lin, complaining of worsening vision. Dr. Lin assessed Plaintiff's vision as 20/40 in his right eye and 20/25 -2 in his left eye with correction, and recommended further Avastin injections, which Plaintiff received in January and February 2013. R. at 470, 480, 483-84, 489. In February 2013, Plaintiff complained he was having distortions in both eyes, but his visual acuity was listed as stable, and his vision was assessed as 20/30 -2 in his right eye and 20/25 -2 in his left eye with correction. R. at 473-74. Plaintiff again noted he was "starting to see distortions" in May 2013, at which time his vision was assessed as 20/40 -2 in his right eye and 20/70 in his left eye with correction. R. at 464. The following month, Plaintiff reported there were no changes in his visual acuity since his last appointment, and noted he was still having distortions. R. at 461. Dr. Lin assessed Plaintiff's vision as 20/40 in his right eye and 20/80 -1 in his left eye, and again recommended further Avastin injections, which Plaintiff received on June 12 and 14, 2013. R. at 455-58, 461-62.

When Plaintiff next saw Dr. Lin on August 14, 2013, his vision had worsened in several respects. Plaintiff not only complained of having distortions, but said his visual acuity "seem[ed] to be getting worse" and also reported that he was "[n]oticing more blurred [visual acuity] and more 'voids' in his [visual acuity]," and was struggling when reading on a computer. R. at 448.

---

[10] At Plaintiff's April 2012 visit, Dr. Linn assessed his vision as 20/70 -1 in his right eye and 20/150 +1 in his left eye, but this assessment was without correction, as Plaintiff had left his glasses at home. R. at 334.

Dr. Lin again recommended further Avastin injections. R. at 454.[11] By the time of his next visit with Dr. Lin in February 2014, Plaintiff reported that he was experiencing decreased visual acuity, as well as distortions, floaters, and blind spots in both eyes, and was having frequent headaches. R. at 436. Plaintiff also stated his symptoms had worsened in the past three months, and, consistent with this assertion, Dr. Lin assessed Plaintiff's vision as 20/60-2 in his right eye and 20/100 -1 in his left eye with correction. *Id.*

In arguing the medical evidence regarding his visual impairment prior to August 14, 2013, shows he could not perform any of the jobs identified by the vocational expert, Plaintiff stresses Dr. Lin's assessment of his left eye vision as 20/70 and 20/80 -1 in the two to three months prior to August 14, 2013, noting "20/70 to 20/160 vision with correction represents a moderate visual impairment." Pl.'s Objs. 4 (citing http://www.aoa.org/patients-and-public/caring-for-your-vision/low-vision?sso=y). Notably, Plaintiff does not suggest his vision was in the "moderate visual impairment" range at any time prior to May 22, 2013. Moreover, his right eye vision was still assessed as 20/40 in May and June 2013. While the medical evidence supports the ALJ's finding that Plaintiff had some vision loss prior to August 14, 2013, it is not inconsistent with the ALJ's finding that he could perform the agricultural produce sorter job despite his impairment.

Because this Court agrees with the Magistrate Judge that the ALJ's finding that Plaintiff could perform the job of agricultural produce sorter is supported by substantial evidence, Plaintiff's objection to the R&R will be overruled, the R&R will be approved and adopted, and Plaintiff's request for review will be denied. An appropriate order follows.

---

[11] Plaintiff again left his glasses at home during the August 14, 2013, visit; hence, Dr. Lin assessed Plaintiff's uncorrected vision, finding his vision was 20/70 -2 in his right eye and 20/150 -1 in his left eye. R. at 448.